### John Polarek v. Thomas Gordon, Adm'r, etc.

1. EQUITY—*When It Will Enjoin the Collection of a Judgment.*—A court of equity will take jurisdiction when the facts show it to be against conscience to execute a judgment, of which facts the injured party could not avail himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident without fault or negligence on his part.

2. JUDGMENTS—*When a Court of Equity Will Restrain the Collection.*—Where a party has a defense to an action which first comes to his knowledge after the trial in a court of law, where it would be a fraud in the party to insist upon enforcing his judgment, a court of equity will take jurisdiction and enjoin the collection of such judgment.

3. SAME—*When the Rule Will Be Relaxed.*—The strictness with which courts of equity look upon a bill to enjoin a judgment will be

Polarek v. Gordon.

relaxed where an administrator is defending, who has no personal knowledge of the matter in litigation.

4. CHANCELLOR—*When His Findings Are Conclusive upon Questions of Fact.*—The chancellor, who hears and sees the witnesses testify, is in a better position to judge of their relative credibility, and his finding will not be disturbed unless upon the whole evidence it appears that such finding is clearly and palpably wrong.

**Bill to Enjoin the Collection of a Judgment.**—Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed June 5, 1902.

MALLEY & SIMS, attorneys for appellant.

JULIUS F. SMIETANKA and PEASE & POLKEY, attorneys for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

In 1889 John Potulny gave his promissory note to appellant for $350. In 1891 appellant was indicted for murder. Mr. C. Stuart Beattie of the Chicago bar defended him. Potulny was his friend, and joined one John Rosanek in giving bonds for appellant in large amounts, and in many ways aided him in making a successful defense to the charge. Among other things, he united with appellant in the execution of a note for $250 to the order of Mr. Beattie for attorney's fees. This note Mr. Beattie says was paid by Potulny, and his evidence is corroborated by a receipt for $125 and by an indorsement on the note of payment in full by Potulny, both of which papers were delivered to Potulny by Mr. Beattie. A month later than the time of the last payment upon the Beattie note, and on the day of and after the acquittal, on their way home from the court, Rosanek, a disinterested witness, swears Potulny said to appellant: "Now you are through with the case and I don't owe you anything; I give you all that I owe you." Polarek said: "All right, but you didn't give me any interest on the money." Potulny says: "What? do you think I give you interest when I spend such a big time for you this couple of months and lost my job? do you think that I am going to pay you interest yet?" Polarek said: "Let

it go." This evidence stands uncontradicted. In 1896
Potulny died. Gordon was appointed his administrator.
Among the accounts due the estate was one against Pola-
rek for $7. Upon demand the latter paid $1, and after-
ward said that he had a claim against the estate which was
evidenced by a note, but that he "had lost the note." A
month later he filed a claim in the Probate Court against
the estate upon the said $350 note. The court allowed it
in the sum of $190. Appellant appealed to the Circuit
Court, where, upon trial, he recovered a judgment for
$350. After the term had gone by at which this judgment
was rendered, the daughter of Potulny brought to appel-
lee the above receipt and the Beattie note, which she had
just found among her father's papers. This was the first
knowledge appellee had of the existence of these papers.
He had made an examination of the papers of the estate
three several times to find something to show that appel-
lant's claim had been paid, but without success.

Upon the discovery of these papers the present bill was
filed, setting up the foregoing facts, and praying, among
other things, that a perpetual injunction be issued, restrain-
ing the collection of the judgment. At the hearing the
chancellor found the issues for the complainant, and per-
petually enjoined the collection of said judgment.

From this decree appellant prayed for and perfected an
appeal.

The learned chancellor found that this note for $350 had
been fully paid in the lifetime of Potulny, and that appel-
lant is wholly unworthy of belief. A careful examination
of the record convinces us that he is right upon both these
questions of fact. The chancellor, who saw all the wit-
nesses and heard each of them, is better qualified to judge
of the weight and value of the testimony than is a court
of review, which reads only the written evidence. His
findings upon questions of fact must be accepted by this
court unless they be clearly and manifestly against the
weight of the evidence. Siegel v. Andrews, 181 Ill. 350.

Appellant contends that appellee was guilty of a want of

diligence in not discovering these papers prior to the trial of the action at law.

It must not be forgotten that he is an administrator, acting not upon his personal knowledge, but upon such information as he could gather from others and might glean from the papers of the estate. He swears that he did not know that any such evidence was in existence until the papers were handed to him by the daughter of the deceased; nor did he know prior to that time that Mr. Beattie had defended appellant in the Criminal Court. He says:

"Before I appeared in the case before Judge Gibbons I made a search for papers belonging to Mr. Potulny. I looked about three times all over the house and I never found anything that would show that Potulny did pay the money to John Polarek."

This is sufficient. The strictness of the rule as to diligence is relaxed where an administrator is defending, and it is shown that he has no personal knowledge of the matters in litigation. Hewlett v. Hewlett, 4 Edwards Ch. (N. Y.) 7–17.

Perjury alone is not ground for relief in equity as against a judgment; but if there be added thereto the subsequent discovery, without fault or negligence upon the part of the discoverer, of evidence showing a payment of the claim upon which the judgment is founded, then equity will not refuse relief. This principle is universally recognized by our courts. (Owen v. Ranstead, 22 Ill. 160–168.) Otherwise a debt will be twice paid. This would be in opposition to every principle of right and equity. Wilday v. McConnell, 63 Ill. 279–282.

Appellee, not satisfied with the abstract presented by appellant, files a "supplemental abstract," so-called, but it appears to be a complete abstract of all the evidence offered before the chancellor. This practice is not commended. It compels the judges of this court to read much of the evidence twice and adds to the cost of the litigation.

The decree of the Circuit Court is right, and will be affirmed.